IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHNATHAN B. RUDEL,<br>   Plaintiff, | § § § § § | |
| vs. | § § | CIVIL ACTION NO. 2:13-cv-00351<br>**JURY** |
| | § § § | |
| SERVICE CORPORATION<br>INTERNATIONAL and SCI TEXAS<br>FUNERAL SERVICES, INC. D/B/A<br>MEMORY GARDENS FUNERAL HOME<br>   Defendants. | § § § § § § | |

**PLAINTIFF'S RESPONSE AND OBJECTION TO
DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

  NOW COMES PLAINTIFF, JONATHAN B. RUDEL, by and through his undersigned attorneys of record, and, in accordance with the Federal Rules of Civil Procedure, files this, his Response and Objection to Defendants' Motion to Strike Plaintiff's Jury Demand ("Motion"). Plaintiff would show unto the Court the following:

**I.
STATEMENT OF FACTS**

  1. About eighteen months ago, on September 26, 2013, Mr. Rudel filed the lawsuit styled <u>Jonathan B. Rudel v. Service Corporation International</u>, Cause No. 2013DCV-4588-E, in the 148th state District Court of Nueces County, Texas.[1] Mr. Rudel sued Defendant SCI for national origin discrimination under the Texas Labor Code and retaliatory discharge for

---

[1] See Exhibit 1, Plaintiff's Original Petition, file-stamped September 26, 2013, <u>Jonathan B. Rudel v. Service Corporation International</u>, Cause No. 2013DCV-4588-E, in the 148th District Court of Nueces County, Texas.

participation in a wage and hour investigation conducted by the Department of Labor. Mr. Rudel tendered a demand for jury trial within his Original Petition.

2. On November 6, 2013, Defendant Service Corporation International filed its Notice of Removal.[2]

3. On May 21, 2014, Mr. Rudel filed his First Amended Complaint, adding Defendant SCI Texas Funeral Services, Inc., d/b/a Memory Gardens Funeral Home, as a Defendant.[3] Mr. Rudel's First Amended Complaint contained a jury demand.

4. Since the inception of the litigation the Court has issued three Scheduling Orders, the Parties have conducted discovery, and the Defendants have filed three dispositive motions. On the eve of the previously scheduled Pre-Trial Conference of April 8, 2015, Defendant filed the pending Motion to Strike. The Parties have been ordered to submit their Final Joint Pre-Trial Order by April 8, 2015.

5. On March 24, 2015, Defendants, moved to strike Mr. Rudel's jury demand. For the reasons stated below, the Motion should be denied.

6. Mr. Rudel has annexed his Declaration to this Pleading and incorporates same by reference as if fully set forth herein.

## II.
## ARGUMENTS AND AUTHORITIES

7. Defendants' Motion is supported by a fifteen-year-old document entitled "Principles of Employment & Arbitration Procedures" ("Agreement") dated in 1999.[4] Defendants claim the Agreement was entered into between Mr. Rudel and Defendant SCI, Texas. Upon a thorough review of the document, however, the name "SCI, Texas" never appears

---

[2] See Docket Entry No. 1.
[3] See Docket Entry No. 18.
[4] See Motion, Ex. A-1.

anywhere within the Agreement.[5]  Furthermore, the Agreement does not name or identify either Defendant as a signatory to the Agreement.  Instead, the Agreement repeatedly refers only to an unidentified entity called "the Company" – a generic term that is never defined within the Agreement.  While the Agreement provides a signature line for "the Company", the Agreement is unsigned by anyone, and has remained blank for 15 years.[6]  The general rule is that no enforceable contract exists "where the agreement of the parties leaves an essential term for later determination and it is never determined."[7]  The Agreement fails to identify the essential parties, and is, therefore, unenforceable.

8. Defendants then attempt to "prove up" the Agreement through the affidavit of Mr. Gregory Meek.[8]  Mr. Meek, however, fails to identify "the Company" referred to in the Agreement, or the Agreement's connection to either Defendant, if any.  Mr. Meek did not supervise Mr. Rudel in 1999, and lacks any personal knowledge about the Agreement and its purported formation.  His testimony merely supports the claim that the "Agreement" was maintained in Defendants' business files, and nothing more.

9. Even if these gaps are overlooked, Defendants' Motion still fails.  The Agreement nominally and substantively purports to be an arbitration agreement – it is entitled "Principles of

---

[5] The Agreement does not mention "SCI Texas Funeral Services, Inc. D/B/A Memory Gardens Funeral Home," the entity that Defendants have insisted was Mr. Rudel's true employer. The Agreement, however, does contain the initials "SCI," a reference to Service Corporation International, Inc., the entity that Mr. Rudel originally identified as his employer and proper defendant. Defendants now attempt to impose a jury waiver provision on Mr. Rudel while relying on an Agreement pertinent to SCI, the very entity they claim is *not* Mr. Rudel's employer. Although Defendants attempt to use this argument as both a shield and a sword, Mr. Rudel contends that it is a tacit admission by Defendants that SCI, contrary to their arguments before the court, is indeed Mr. Rudel's acknowledged employer.
[6] See Motion Ex. A-1 at p.2.
[7] Central Texas Micrographics v. Leal 908 S.W.2d 292 (Tex.App.–San Antonio, 1995); accord Wiley v. Bertelsen, 770 S.W.2d 878, 882 (Tex.App.—Texarkana 1989, no writ).
[8] See Motion, Ex. A.

Employment & *Arbitration Procedures*".  The four corners of Agreement call for arbitration, not a mandatory bench trial.[9]

  A.  Analysis of the Agreement

  10.  The Agreement plainly addresses two topics:  1) specific "Principles of Employment" adopted by "the Company" to govern workplace conduct; and 2) resolution of employment related claims via arbitration.[10]  Six specific Principles of Employment are identified on page one.[11]  The Agreement further reads, "In order to insure equitable, efficient and cost-effective resolution of these matters, employment-related disputes will be resolved via arbitration, in accordance with the following procedures." [12]  The balance of the Agreement more specifically describes the arbitration procedures to be followed should arbitration be properly compelled.[13]  By every measure, the Agreement is nothing short of an arbitration agreement.

  11.  According to the notice on page two, "… BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND YOUR COMPANY (EXCEPT THOSE SPECIFICALLY EXCLUDED IN SECTION 2 ABOVE) DECIDED BY ***BINDING ARBITRATION*** AND YOU ARE WAIVING YOUR RIGHT TO A JURY ***OR COURT TRIAL***." (emphasis added)[14]  The Agreement clearly contemplates binding arbitration and describes the consequences, including a waiver of a jury, or

---

[9] As admitted by Defendants, they do not seek to compel arbitration. ("Although neither party has sought to compel arbitration…". (See Motion, para. 2.3.)  This Response does not concede Defendants' ability to compel arbitration under the Agreement.  Any future attempt by Defendants to compel arbitration will be opposed via separate Response and briefing due to lack of contract formation, waiver and other arguments.  As argued herein, *if* the Agreement had been properly invoked by Defendants and upheld by the court, any resultant "jury waiver" would have been the by-product of arbitration – not a trial before the court.

[10] See Motion Ex. A-1.

[11] See Motion Ex. A-1 at p.1.

[12] See Motion, Ex. A-1, p.1.

[13] See Motion Ex. A-1, p. 2-3 and Exhibit A to Exhibit A-1, "Arbitration Procedures".

[14] See Motion, Exhibit A-1, p. 2.

even court (bench) trial. Defendants are attempting to reverse-engineer a "jury waiver" agreement out of an arbitration agreement.

12. Defendants attempt this reverse-engineering by cherry-picking useful provisions in the Agreement while conveniently ignoring provisions that contradict their position. According to the Agreement, "MODIFICATIONS: NEITHER EMPLOYEE'S AT-WILL STATUS NOR ANY OF THE ABOVE PROVISIONS PERTAINING TO ARBITRATION MAY BE MODIFIED EXCEPT BY A WRITTEN AGREEMENT SIGNED BY BOTH EMPLOYEE AND THE COMPANY."[15] Mr. Rudel has never agreed to knowingly waive his constitutional right to a jury, and Defendants have not executed the Agreement. Defendants' attempts to force a trial before the bench is a modification of terms prohibited by the very Agreement they now seek to enforce.

B. <u>Defendants Have Failed to Meet Their Burden of Proof</u>

13. Defendants rely on <u>Montalvo v. Aerotek , Inc.</u>,[16] in support of their Motion, which holds that an Agreement such as this cannot be enforced as a jury waiver: "[T]he right of jury trial is fundamental, and courts must indulge every reasonable presumption against waiver."[17] The court also recognized:

> In the context of an express jury waiver, the majority of federal courts have held that the party seeking enforcement of the waiver has the burden of showing that the consent of the party making the waiver was knowing, voluntary, and intelligent, but a circuit split exists on this issue. Although the Fifth Circuit has not addressed who carries the burden, the Court concludes that *the party seeking to enforce the waiver has the burden*. Regardless of who shoulders the burden, the factors used by federal courts to decide whether a waiver was made knowingly, voluntarily, and intelligently include: (1) whether there was gross disparity in bargaining power between

---

[15] See Motion, Exhibit A-1, p. 2.
[16] No. 5:13-CV-997DAE, 2014 WL 66080421 (W.D. Tex. Nov. 25, 2014).
[17] ID.; JV.M_____

the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous.[18]

14. In their Motion, Defendants attempt to prove each of these factors with bald, unsupported conclusions. With regard to negotiability, Defendants argue, "that Rudel may not have attempted to negotiate the terms of the Agreement, including jury waiver, does not establish the terms were not negotiable."[19] This speculation is nothing but a guess at what may or may not have occurred, and Mr. Rudel has offered testimony based upon personal knowledge firmly disputing Defendants' allegations.

15. With regard to relative bargaining power, Defendants claim, "Rudel was given an opportunity to review the Agreement and ask questions, and there is no indication it was given on a 'take it or leave it' basis."[20] Defendants also allege, "Rudel simply did not attempt to bargain over the terms of the Agreement".[21] These self-serving statements are unsupported by evidence and are of no probative value. Mr. Rudel has offered testimony based upon personal knowledge firmly disputing Defendants' allegations.

16. Defendants further argue, "There is no evidence Rudel sought to have an attorney review the Agreement before he signed it. Rudel was given the opportunity to review the Agreement and ask questions before he signed it."[22] Again, these statements assume facts and are unsupported by deposition or affidavit testimony or other evidence. Mr. Rudel has offered testimony based upon personal knowledge firmly disputing Defendants' allegations.

---

[18] ID.; RDO Fin. Servs. Co. v. Powell, 191 F.Supp.2d 811, 813–14 (N.D.Tex.2002).
[19] See Motion, para. 3.5.
[20] See Motion, para. 3.7.
[21] See Motion, para. 3.8.
[22] See Motion, para. 3.9.

17. With regard to Mr. Rudel's business acumen, Defendants claim, "Rudel has sufficient business knowledge to have been promoted to a Market Manager position, which he held for six years, and was responsible for managing numerous employees as well as several locations. Furthermore, the jury trial provision in the Agreement is written in simple, straight-forward language and does not require specialized knowledge or sophistication to understand it. Accordingly, Rudel's business acumen supports a finding that the waiver is enforceable."[23] Defendant's arguments are flawed as the Agreement was signed by Mr. Rudel in 1999 when he was first employed by Defendants.[24] Obviously, whatever business acumen he gained through promotion and management, if any, occurred *after* he signed the Agreement. Defendants fail to address whether Mr. Rudel had ever negotiated the same or similar agreements before. Mr. Rudel's later acquired acumen is irrelevant. Mr. Rudel has offered testimony based upon personal knowledge firmly disputing Defendants' allegations.

### III.
### CONCLUSION

18. Defendants' Motion is supported by a single document which fails to identify either Defendant as a party or as Mr. Rudel's employer. The Agreement, if properly invoked and found enforceable, calls for arbitration, not a bench trial. Under the cited legal authorities, the right of jury trial is fundamental and courts must indulge every reasonable presumption against waiver. Defendants carry the burden to show the waiver is enforceable and have failed to meet their burden. Basic contract principles confirm an enforceable Agreement was never created between the parties. Assuming the Agreement is valid, Defendants waived the ability to enforce

---

[23] See Motion, para. 3.10.
[24] See Motion, para. 2.1.

it by substantially invoking the judicial process which has resulted in significant delay and prejudice to Mr. Rudel. Defendants' Motion should be denied.

## IV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF JOHNATHAN B. RUDEL respectfully prays that the Court deny Defendants' Motion to Strike Plaintiff's Jury Demand and grant him any further relief, either at law or at equity, to which he may show himself justly entitled.

Respectfully submitted,

SÁNCHEZ & WILSON, P.L.L.C.
MARK ANTHONY SÁNCHEZ, ESQ.
115 East Travis, 19th Floor
San Antonio, Texas 78205
(210) 222-8899
(210) 222-9526 (Telecopier)
ATTORNEYS FOR PLAINTIFF


By: /s/ Mark Anthony Sánchez
TEXAS STATE BAR NO. 00795857
SOUTHERN DISTRICT BAR NO. 21426
ATTORNEY-IN-CHARGE


CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Plaintiff's Response and Objection to Defendants' Motion to Strike Plaintiff's Jury Demand has been delivered *via* E-File Notification on this the 1st day of April, 2015 to *via* E-File Notification to Tonya Beane Webber, Esq., Porter, Rogers, Dahlman & Gordon, P.C., One Shoreline Plaza, 800 North Shoreline Boulevard, Suite 800 South, Corpus Christi, Texas 78401.

/s/ Mark Anthony Sánchez
MARK ANTHONY SÁNCHEZ, ESQ.

NOTICE OF ELECTRONIC FILING

      The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 1st day of April 2015.

                                /s/ Mark Anthony Sánchez
                                MARK ANTHONY SÁNCHEZ, ESQ.